UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-CR-00166-MOC-DSC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| AMUR MASHUG EL, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on defendant's Motion to Dismiss the Indictment (#75), which is supported by a Memorandum of Law included in the Motion. The government has filed its Response (#80). With the issues now joined and fully briefed, the Court will deny the Motion to Dismiss for reasons that follow.

**FINDINGS AND CONCLUSIONS**

**I.**    **Introduction**

Defendant is charged with two counts of filing false liens against the real and personal property of two federal employees. Specifically, it is alleged that defendant caused to be filed false UCC1 and UCC3 financing statements against these employees with the Mecklenburg County Register of Deeds Office, representing that two other individuals, Alicia Renee Taylor and Mark Eric Dorsey, had claims against these employees, all in violation of 18 U.S.C. § 1521. As discussed at greater length below, defendant herein had convinced these individuals, who were facing sentencing in this court, that such filings would "pay off" the charges.

Defendant seeks pretrial dismissal, arguing that even if all the facts alleged and proffered by the government were proven to be true, the liens would not be encumbrances against the real

1

or personal property of either employee because the real property designated in those liens was publicly owned.

## II.     Applicable Standard

A pretrial motion to dismiss an indictment for failure to state a claim is governed by Rule 12(b)(3)(B)(v), Federal Rules of Criminal Procedure.[1] That rule provides that a court may dismiss a count where the indictment "fails to invoke the court's jurisdiction or to state an offense." Fed.R.Crim.P. 12(b)(3)(B). An indictment is defective if it alleges a violation of an unconstitutional statute, or if the "allegations therein, even if true, would not state an offense." United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004). Here, defendant contends that the allegations contained in the Indictment and the facts underlying the charges against him would not support a conviction.

## III.    Factual Background

For the limited purpose of the pending motion, defendant does not dispute the government's proffer of facts either in the indictment or in its Response. See Motion (#75) at 8. Thus, the Court has considered the allegations in the Indictment and the proffer in a light most favorable to the government and will draw heavily on the statement of facts contained in the Response without further citation.

All of the UCC filings relevant to this case were filed by defendant at the Mecklenburg County Register of Deeds. The first set of UCC documents, filed in July of 2011, relate to Alicia

---

[1] Defendant does not cite the provision of Rule 12 under which he is moving; however, the government has not argued that the motion cannot be addressed pretrial. This may well be because the argument does not squarely fit into any provision of Rule 12(b), but is one usually made under Rule 29. Rule 12(b)(3)(B)(v) appears to be the closest fit for pretrial consideration. While running precariously close to a prohibited review of the Grand Jury's finding of probable cause, the Court has taken up the issue pretrial as several decisions suggest that such pretrial review is an appropriate course of action. United States v. Covington, 395 U.S. 57, 60-61 (1969); United States v. Flores, 404 F.3d 320, 324-25 (5th Cir.2005). C.f. United States v. Salman, 378 F.3d 1266, 1268 (11th Cir.2004) (*per curiam*).

Renee Taylor and the second set of UCC documents, filed in October of 2011, relate to Mark Eric Dorsey, II.

During the late spring of 2011, Taylor had been introduced to defendant as a person that could help her with her federal criminal case. Defendant, whose real name is Darrell Scott Porter, indicated that he could help Taylor with her case and began educating her about how she could "pay off" the indictment in her case to avoid going to jail. At defendant's direction, Taylor used defendant's computer to enter data into UCC document templates and related forms for filing.

On July 15, 2011, defendant filed a UCC1, instrument number 2011079083 at the Mecklenburg County Register of Deeds at approximately 4:19 p.m. He paid for the filing in cash and the payment information in the Register of Deeds database indicates "Amur El" was the payor. Video surveillance from the clerk's counter at the Register of Deeds shows Defendant providing the documents to the clerk for filing and receiving the processed documents. The UCC1 document listed Alicia Renee Taylor as the debtor and the Alicia Renee Taylor Estate as the secured party. The UCC1 document noted in Section 13 that the financing statement covered a fixture filing and provided in Section 14 a property description and parcel description for property located at 700 East Stonewall Street in Charlotte.

On July 18, 2011, Defendant filed a UCC3, instrument number 2011079473, at approximately 1:48 p.m. on behalf of Alicia Renee Taylor. The payment receipt for the filing indicated that the UCC3 filing was paid by customer "Amur Defendant" and paid via credit card. The Mecklenburg County Register of Deeds credit card sales receipt listed "Darrell Scott Porter" as the payor. The referenced UCC3 identified by name an individual whose initials are K.W.M., who at the time of the filing was employed with the United States Attorney's Office for the Western District of North Carolina and was the prosecuting attorney on Taylor's criminal matter.

The UCC3 for Alicia Renee Taylor, instrument number 2011079083, listed Taylor's criminal court case number 3:10-CR-124-05. The UCC3 also listed a specified bond amount as a "full setoff and or discharge of payment" related to Taylor's federal criminal case number. The UCC3 noted in Section 6a and 6b that the United States Attorney's Office or the listed victim K.W.M. were the "fiduciary debtor." Victim K.W.M. was again listed on the second page of the UCC3 as the "fiduciary debtor."

The second set of fraudulent UCC documents filed by defendant related to the federal criminal case of Mark Dorsey. On October 3, 2011, defendant filed a UCC1, instrument number 2011110663, at approximately 11:33 a.m. at the Mecklenburg County Register of Deeds. Video surveillance from the clerk's counter at the Register of Deeds shows defendant providing the documents to the clerk for filing, as well as his receipt of the processed documents. The UCC1 document listed "Dorsey II, Mark Eric – Cestui Que Trust" as the debtor and Mark Eric Dorsey as the secured party. The UCC1 document noted in Section 13 that the financing statement covered a fixture filing and "Exhibit A" attached to the filing gave a parcel identification number and property description for property located at "600 E 4th St. Charlotte, NC 28202-2816." (Attachment 3, pp.2-3).

At the time of the October 2011 filings, Dorsey was in federal custody, having pled guilty on July 5, 2011, to conspiracies to distribute and possess with intent to distribute marijuana and to commit money laundering in the Western District of North Carolina in criminal case number 3:10-CR-238-RJC-10. Dorsey had been given defendant's name from another inmate as a person that could help Dorsey with his criminal case. Soon thereafter, Dorsey's mother contacted defendant and provided information that defendant requested about Dorsey's criminal case for defendant to

4

file the UCC paperwork. Based on defendant's statements, Dorsey believed that his criminal case would be dropped, and he would go free.

During the afternoon of October 3, 2011, defendant filed a UCC3, document number 2011110963, with the Mecklenburg County Register of Deeds at approximately 3:42 p.m. This UCC3 added as a debtor an individual whose initials are R.J.C., who is/was employed as a United States District Judge within the Western District of North Carolina, and who was the presiding judge over Dorsey's federal criminal case. Consistent with assigning R.J.C. as a debtor, the second page of the UCC3 listed the fiduciary debtors as an AUSA and the United States District Court. The UCC3 for Mark Eric Dorsey identified a bond amount as a "full setoff and or discharge of payment" for Dorsey's federal criminal matter, bearing case number 3:10-CR-238-RJC. Video surveillance from the clerk's counter at the Register of Deeds shows defendant providing the documents to the clerk for filing and receiving those processed documents.

During the fall of 2011 and into the beginning of 2012, the FBI recorded meetings between defendant and a Confidential Source and undercover agents. During the meetings, defendant described the scheme whereby he would file UCC documents on judges or court officers in order to have the cases dismissed.

## IV. The Indictment

On June 28, 2016, the Grand Jury for the Western District of North Carolina returned a Bill of Indictment alleging retaliation by defendant against a federal judge or federal law enforcement official by false claim.

Count One alleges that between July 15, 2011 and July 18, 2011, defendant filed, with the Register of Deeds in Mecklenburg County, a false lien against the real and personal property of the individual K.W.M., an officer of the United States Government on account of the performance

of that person's official duties. The liens specified were a UCC1 Financing Statement and a UCC3 Financing Statement Amendment, the latter of which represented that Alicia Renee Taylor had a claim against K.W.M.

Count Two alleged that on or about October 3, 2011, Defendant performed the same unlawful action related to the individual R.J.C., also an officer of the United States Government. The liens in question there were a UCC1 Financing Statement and a UCC3 Financing Statement Amendment, the latter of which represented that Mark Eric Dorsey had a claim against R.J.C.

**V.     Discussion**

In moving to dismiss, defendant argues that the UCC financing statements at issue are not "false lien[s] or encumbrance[s] against the real or personal property of [a government official]" as required by 18 U.S.C. §1521. He contends that these documents fail to implicate the government employee's "real or personal property" and, at best, implicate property owned by Mecklenburg County, to wit, an office building and a jail. While conceding that these documents reference the federal employees, he describes those references as "fleeting." Ultimately, defendant argues that because no real or personal property of any government employee is implicated, Section 1521 is not triggered.

This Court's analysis of the Motion to Dismiss begins with reading the statute. Section 1521 provides, as follows:

> Whoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.

18 U.S.C. § 1521(Added Pub. L. 110–177, title II, § 201(a), Jan. 7, 2008, 121 Stat. 2535.)

Next, the Court has considered the elements of a Section 1521 offense are, which are as follows:

(1) that the defendant filed, in a public record, a false lien or encumbrance;

(2) that the lien or encumbrance was filed against the property of an employee of the United States or an agency of the United States government;

(3) that the lien or encumbrance was filed on account of that employee's performance of official duties; and

(4) that the defendant knew or had reason to know that such lien or encumbrance contained a materially false or fictitious statement or representation.

United States v. Williamson, 746 F.3d 987, 993-94 (10th Cir. 2014). Here, defendant's primary challenge is directed at a portion of the second element, specifically, that the government's proffer is insufficient to satisfy the requirement that lien be filed "against the property of an employee."

The Court will, however, first consider a secondary challenge, which is, under the first element, whether the documents filed constitute liens or encumbrances in the first place. It appears from the face of the documents (attached as exhibits to the motion) that they are indeed liens or encumbrances, albethey both false and invalid. A lien is a legal right or interest a creditor has in another's property to secure payment of a debt or performance of an obligation. *Black's Law Dictionary* (8th ed. 2004). An encumbrance is a claim or liability attached to a property that may lessen its value. United States v. Davenport, 2011 WL 1155191, at *1 (E.D. Wash. March 29, 2011) (noting that "[t]he use of 'encumbrance' suggests Congress intended to avoid technical requirements — any document that looks like a lien is prohibited."). Because these documents patently appear to be liens, they satisfy the first element of a Section 1521 violation. At trial, the

7

parties should be prepared to discuss at the charge conference whether the Court should instruct the jury that, as a matter of law, these documents are liens or encumbrances.

The Court turns next to defendant's primary challenge, which is that the government lacks any evidence that these liens or encumbrances were filed "against the property of an employee." This question is one of first impression in the Fourth Circuit and defendant contends that the Court should consider it to be one of first impression nationally as the cases on which the government relies are factually distinct from his case. While the Court recognizes the nuances in the facts underlying each case, those differences do not break the common thread of the reported cases, which is that the false liens need not correctly identify property that the federal employees actually own. Instead, it is enough that the false lien purports to make a claim against the federal employee.

The Courts which have addressed what will suffice as "the property on an employee" have held that the property referenced in or attached by the lien need not actually belong to the government official at issue. United States v. Reed, 668 F.3d 978, 981 (8th Cir. 2012). The Court of Appeals for the Eighth Circuit reasoned in Reed that "the statute criminalizes the filing of, the attempting to file, or the conspiring to file false liens or encumbrances, not false valid liens or encumbrances." Id. Put another way, it is the public filing of a purported false lien against a federal employee, perpetrated in retaliation for the execution of their official duties, that is criminalized, even if the property over which the claim is asserted -- such as the Brooklyn Bridge -- is clearly not owned by the employee. The Eighth Circuit is not alone in its determination, as the Court of Appeals for the Fifth Circuit recently held that "[i]t [i]s irrelevant that the filing did not pertain to real or personal property that an employee actually owned." United States v. Jordan, 851 F.3d 393, 398 (5th Cir. 2017). In addition, the Court of Appeals for the Ninth Circuit upheld a Section 1521 conviction in United States v. Neal, 776 F.3d 645 (9th Cir. 2015), even though

"there was no evidence that the collateral he attempted to attach ... was real or personal property of a federal employee as required by the statute." Id. at 651. The appellate court reasoned that

> [b]ecause the statute can be violated without completed conduct, the harm the statute protects against arises from the nature of the documents to be filed, not the validity of the documents.
>
> ***
>
> Indeed, the statute criminalizes the filing of, the attempting to file, or the conspiring to file false liens or encumbrances, not false valid liens or encumbrances. Validity inquiries examine inter alia, the sufficiency of the information found in the documents (e.g., correctness and completeness of the debtor's name and address), the timing of the filing, the manner of the filing, the correctness of the listed collateral or its legal description and the sufficiency of supporting documents. The statute makes such validity inquiries irrelevant.

Id. at 653 (citation omitted). The Ninth Circuit concluded that "[t]he prohibition is triggered by the type of document and resulting harm without regard to the validity or existence of the identified collateral in such documents. Neal's focus on collateral is misplaced, because the collateral he listed in his Lien Documents is not relevant to whether he violated the statute." Id. at 654.

In the absence of guidance from the Court of Appeals for the Fourth Circuit, this Court finds the reasoning of the Fifth, Eighth, and Ninth Circuits to be highly persuasive. For purposes of this Motion, it is undisputed that defendant filed various UCC documents with the Mecklenburg County Register of Deeds on behalf of Taylor and Dorsey, falsely listing an interest that these individuals had in the purported property of K.W.M. and R.J.C., respectively, and specifically referencing Taylor and Dorsey's respective federal criminal case numbers. Defendant's claim that the debts at issue in the financing statements were "ambiguous," Motion (#75) at 3, overlooks the fact that the UCC1s in both counts reference "all of Debtor's interest now held or hereafter acquired is hereby accepted as Collateral for securing contractual obligation in favor of the Secured Party." Under the UCC, a financing statement is "sufficient" if it names the debtor, names the secured party (creditor) or a representative, and "indicates the collateral covered." UCC § 9–502.

9

An indication that the collateral "covers all assets or all personal property" is sufficient. UCC § 9–504. Consistent with the UCC, the language "all of Debtor's interest now held or hereafter acquired" indicates the collateral covered. Like the UCC documents in Reed, the UCC1 documents for both Taylor and Dorsey listed "all proceeds, products, accounts, fixtures" – the types of personal property against which valid liens can be filed. Thus, it is defendant's filing or attempt to file false papers claiming a lien or encumbrance against the property of government employees that is criminalized. Even if defendant's only reference was to public property, such as the Brooklyn Bridge, that is immaterial since a "lien or encumbrance by definition always concern the property of the debtor." Reed, 668 F.3d 984.

The Court concludes that the documents prohibited under Section 1521 do not have to be valid or make reference to property that the employee-victims actually own to constitute a violation of the statute. Thus, the government has proffered sufficient evidence which would support each element of a Section 1521 offense.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Dismiss the Indictment (#75) is **DENIED.**

Signed: December 14, 2018



Max O. Cogburn Jr
United States District Judge